CITY OF DALLAS v. EVALYN PEACOCK.

No. 360.—Decided December 16, 1895.

1. **Disqualification of Judge—Taxpayer.**
    The fact that a judge of the Court of Civil Appeals is a taxpayer in a city does not disqualify him from sitting in an appeal in a damage suit against the city in which judgment had been rendered against the city. (Pp. 60 to 62.)

·2. **Case Limited.**
    City of Austin v. Nalle, 85 Texas, 534, limited to suits to cancel bonded indebted-ness of a city for which a special tax had been provided and levied. (P. 63.)

3. **Disqualification of Judge.**
    If a judge be disqualified, the parties cannot waive the disqualification. (Cham-bers v. Hodges, 23 Texas, 104.) (P. 63.)

QUESTIONS CERTIFIED by Court of Civil Appeals for Fifth District, in an appeal from Dallas County.

*Holloway & Holloway,* for appellee—The fact that a judge is a resident taxpayer of a city does not disqualify him in a case which may result in a money judgment for or against the city. Rhine v. City of McKinney, 53 Texas, 354, 360; Clermont County v. Lytle, 3 Ohio, 289; Thomas v. Mt. Vernon, 9 Ohio, 290; Ex-parte Guerrero, 69 Cal., 88; State v. Craig (Me.) 13 Atl. Rep., 129; State v. Severance (Me.) 4 Atl. Rep., 560; Fletcher v. Railway, 74 Me., 434; State v. Intoxicating Liquors, 54 Me., 564; Omaha v. Olmstead, 5 Neb., 446; State v. McDonald, 26 Minn., 445; s. c., 4 N. W. Rep., 1107, 1111; Webster v. Washington Co., 26 Minn., 220; s. c., 2 N. W. Rep., 698; Sauls v. Freeman, 24 Fla., 209; s. c. 12 Am. St., Rep., 190; Foreman v. Marianna, 43 Ark., 331; 1 Elliott Gen. Pr., sec. 212; 1 Dillon Mun. Corp., sec. 431.

There are probably few trial judges who are not called on every year to try cases in which money judgments are sought for or against cities or counties of which they are taxpayers. If a judge were disqualified in such a case, nothing in the law would be more firmly settled or more generally known. If the judges are disqualified in such cases, then it follows, by the same token, that no judge in the State would be qualified to try a similar case in which the State of Texas might be a party. The Nalle case is the product of this court, and we respectfully leave it to this court to dispose of it, without comment from us.

De minimis non curat lex. The court can probably take judicial notice that, as a rule, lawyers and judges are tax eaters rather than taxpayers, and that their interest as taxpayers is "so remote, trifling and insignificant that it may fairly be supposed to be incapable of affecting the judgment or of influencing the conduct of an individual." Cooley Const. Lim. 412.

GAINES, CHIEF JUSTICE.—In this case the Court of Civil Appeals, for the Fifth Supreme Judicial District, submit for our determination the following questions:

"In this case, and a number of others pending on the docket of this court, the question of disqualification of the judges occurs to us under the Nalle case, cited below.

Two of the judges of the Court of Civil Appeals for the Fifth Supreme Judicial District own residences in the city of Dallas, and all three of them are taxpayers in the city of Dallas.

This was a suit below by appellee against the city of Dallas for $10,000 for personal injuries alleged to have been received by appellee by reason of a broken and defective grating to a sewer, negligently left open by the city. There was a recovery below for $3000 damages.

The question of disqualification is not raised by either party to the suit, but is suggested by the judges themselves.

QUESTION 1. Does the fact that such judges are taxpayers in the city disqualify them from sitting as judges in such case?

QUESTION 2. Does the disqualification mentioned by the Supreme Court in the case of City of Austin v. Nalle, 85 Texas, 520, include all cases where the judges of the Court of Civil Appeals are taxpayers in the city and where there may be a money judgment against the city?

QUESTION 3. In the absence of any objection on the part of such litigants on the ground of disqualification, or where there is a waiver on their part, would it be proper for the judges of this court to decide the case?"

The counsel for the city of Dallas has filed no briefs upon the questions certified. A brief for appellee has been presented, which contains a citation of numerous authorities in support of the position that the judges of the court are not disqualified. It is noteworthy that, notwithstanding the judges are taxpayers of the appellant corporation, counsel for the appellee are not unwilling to submit the case to their determination.

I. We think the decided weight of authority is that, at common law, a taxpayer in a municipal corporation has such an interest in a suit between the corporation and another party, as disqualifies him to sit either as judge or juror in the case. Hesketh v. Braddock, 3 Burr., 1847, is a leading case upon the subject, in which it was held that the freemen of the city of Chester were disqualified to sit upon the trial of a case which involved the question of the existence of a custom "to exclude all strangers from trading in the city." It was held that the freemen had an interest in the result of the suit, and that that interest, however minute, disqualified them. In the City of London v. Wood, 12 Mod., 686, Holt, C. J., says: "To say that one who is free of the corporation should not be judge, because he is to have a share of the penalty, is as ridiculous as it is groundless;" but in that case it was held that the judgment was voidable and should be reversed, because the suit was brought by the Mayor and Commonalty and the court was held before the Mayor and Aldermen. The ground was that the Mayor was judge in his own case, the record so showing, though, as a matter of fact, the recorder may have presided as his deputy. We doubt if the English cases which hold the freemen of a city, or the burgesses of a borough, disqualified to act as judges or jurors in such suits should be deemed precedents for us to follow, for the reason that there seems to exist a well-founded distinction between municipal corporations in England, where the charters are granted by the crown and confer exclusive privileges and special immunities, and such corporations in this State, which are

established purely for governmental purposes. As pointed out in East-
man v. Meredith, 36 N. H., 284, the former are assimilated rather to
private than to public corporations proper, as known in this country.
It may be that the freemen of an English city have a more direct inter-
est in the corporate business and funds than has a resident citizen or
taxpayer of a municipality in the United States. However that may be,
there are numerous decisions in the American courts, of which we cite
some, which hold that a resident and taxpayer of a municipality has
such interest in a suit brought by or against such municipality as to dis-
qualify him from sitting as judge or juror. Com. v. Ryan, 5 Mass., 90;
Clark v. Lamb, 2 Allen, 396; Inhabitants of Tolland v. Commissioners,
13 Gray, 12; Wood v. Stoddard, 2 John., 194; Diveny v. Elmira, 51 N.
Y., 506; Fulweiler v. St. Louis, 61 Mo., 479; Rose v. St. Charles, 49
Mo., 509; City Council v. Pepper, 1 Rich. (So. Ca.), 364. It is, however,
generally recognized in such cases that the interest is so minute and re-
mote that the Legislature has power to remove the disqualification; and
in some of the cases cited, while the common law rule is recognized, it
is held that the incompetency was taken away by statute. See also Car-
tersville v. Lyon, 69 Ga., 577; State v. Severance (Me.) 4 Atl. Rep.,
560; State v. Intoxicating Liquors, 54 Me., 564; State v. McDonald, 26
Minn., 445. In the following cases a contrary ruling was made: Board
of Justices v. Fennimore, Coxe's 4 N. J. Law, 190; Kemper v. Louis-
ville, 14 Bush (Ky.), 87; Omaha v. Olmstead, 5 Neb., 446.

But we think the doctrine that being a mere taxpayer of a city does
not work a disqualification is supported by the sounder reason, at least,
as applied to municipalities existing under our laws.

The grounds of disqualification of the judges in this State are pre-
scribed in the Constitution. "No judge shall sit in any case in which
he may be interested," is the language of the provision which we are
called upon to construe. (Constitution, article V., sec. 11.) The same
provision in the same language is found in the Constitution of 1845,
and in every constitution since adopted in this State. The interest
meant is a pecuniary interest, that is, such an interest as is capable of
being valued by a pecuniary standard. The slightest interest is suffi-
cient, provided it be immediate and not remote and contingent. (Tay-
lor v. Williams, 26 Texas, 583.) This results from the fact that there
can exist no rule by which it can be determined where the line should
be drawn. An amount which is too small to influence one man might
be sufficient to affect another of a more parsimonious disposition. A
taxpayer in a city, who is not an inhabitant of the city, has no legal re-
lation to the municipality, except in so far as he is liable to the imposts
laid upon his property for the support of the municipal government.
Has he an interest in a suit for or against a city which does not involve
a tax? We think not. There exists a possibility that where a judgment
is given against a city it may result in an increased levy of taxes, and
so the recovery of a judgment by a city may, in some cases, bring about
a reduction of taxation. In case of the State v. Intoxicating Liquors,

supra, it is said: "The interest of the judges is not only extremely min-
ute, but is contingent and dependent entirely upon the decision of an-
other tribunal." So, in the present case, a judgment against the city
cannot in any way affect primarily any one of the judges of the Court of
Civil Appeals, except upon two contingencies: 1st, That the city coun-
cil have not already levied taxes to the limit of their power; and, 2d,
that they may order an increased levy in order to pay the judgment.
This seems to us a remote contingency. The question has never been de-
cided in this court; but the Court of Appeals, as constituted before the
recent change in our judiciary system, held, in Clack v. Taylor County,
3 Willson C. C., sec. 201, that a county judge was not disqualified to sit
in a suit by the county to recover a judgment for money.

We have seen that the provision in question has been incorporated in
our constitutions since 1845, and that in each successive instrument it
has been repeated in the same language. The records of this court
show that eminent judges of this court have sat in cases against cities
in which we have every reason to believe they were taxpayers, and in two
instances, at least, have delivered the opinions in the cases. So we think,
also, that district judges who were inhabitants of cities have uniformly
tried cases against the cities in which they lived. While, therefore,
there has been no formal ruling upon the question, the provision in con-
troversy has been practically construed both by the trial judges and the
judges of the Supreme Court. Until the decision in the case of the City
of Austin v. Nalle, 85 Texas, 520, the competency of a judge who owned
taxable property in a city to sit in a case in which a judgment for money
could be rendered for or against a city, was, so far as we know, never
called in question. The practical construction of the provision must
have been known to the bar of the State, and to the members of the Leg-
islature who passed the resolution propounding the amendments to the
judiciary article of our Constitution, which were voted upon and adopt-
ed in 1891. While section 11, which contains the provision disqualify-
ing a judge from sitting in a case in which he is interested, was amended,
that provision was retained without change; and we think it strongly
persuasive, at least, that it should be interpreted as it had been practi-
cally construed.

In respect to the question before us, the relation of a taxpayer of a
city to the city is not different from that of a taxpayer of a county to a
county. Neither is it distinguishable in principle from that of one who
owns taxable values in the State to the State. Yet that taxpayers in the
State are qualified to sit as judges and jurors in all State cases can not
be questioned. So, also, so far as we know, it has never been questioned
in this State that the taxpayers in a county are competent jurors in all
cases, civil and criminal, in which the fines and penalties recovered go
to the use of the county. The necessity from which this results does
not change the principle. The principle is that the interest—if such it
may be called—is so indirect, remote, and contingent that to hold a
judge or juror not disqualified by reason thereof does not conflict with

that fundamental doctrine laid down in London v. Wood, Taylor v. Williams, supra, that a man can not be made a judge in his own case.

We conclude that the first question should be answered in the negative.

II.   It follows from what has been said that the second question must also be answered in the negative.   In the Nalle case we used this language:

"This suit was brought by a property holder and taxpayer of the city of Austin to enjoin the collection of certain taxes for the years 1891 and 1892, which had been assessed for the purpose of paying the interest and sinking fund upon certain bonds, which it was claimed had been issued by the city for an illegal purpose.   But, in addition to the injunction against the taxes, the plaintiff also sought to cancel the bonds so issued, and to restrain the issue of other bonds for the same purpose.

"The bonds already issued were alleged to amount to the sum of $900,000.   The sum of the bonds the issue of which was sought to be enjoined was $500,000.   If the latter obligations should be issued, they would, prima facie at least, authorize the assessment and collection of a tax upon all taxable values in the city for their payment.   If their issue should be restrained, no such tax could be levied.   It follows, therefore, as we think, that every holder of property in the city which is subject to taxation has not only an interest in the question to be determined by the suit, but also a direct pecuniary interest in the result." (City of Austin v. Nalle, 85 Texas, 534.)   This makes it plain that we merely intended in that case to hold that in a suit to cancel a bonded indebtedness for which a special tax had been provided and levied, and to enjoin the special tax to pay them as well as the issue of new bonds under the same provision, a holder of taxable property in the city was not competent to sit as a judge.   The facts warranted our going no further than this, nor was it our purpose to do so.

III.   It is settled in Chambers v. Hodges, 23 Texas, 104, that if a judge be disqualified the parties cannot waive the disqualification.